UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LISA RIBIS,

          Plaintiff,

v.                                        1:24-cv-00894 (AMN/PJE)

CITY OF SARATOGA SPRINGS, DILLON
MORAN, and STACY CONNORS,

          Defendants.

**APPEARANCES:**                            **OF COUNSEL:**

**COOPER ERVING & SAVAGE LLP**       **PHILLIP G. STECK, ESQ.**
20 Corporate Woods Boulevard – Suite 501
Albany, New York 12211
*Attorneys for Plaintiff*

**WILSON ELSER MOSKOWITZ EDELMAN,**   **ELIZA SCHEIBEL, ESQ.**
**& DICKER, LLP**                              **JOHN M. FLANNERY, ESQ.**
1133 Westchester Avenue
White Plains, New York 10604

150 E 42nd Street                                 **EMMA L. SEMERAD, ESQ.**
New York, New York 10017
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 18, 2024, Plaintiff Lisa Ribis commenced this action in New York Supreme Court pursuant to 42 U.S.C. § 1983 against the City of Saratoga Springs, Commissioner Dillon Moran, and Deputy Commissioner Stacy Connors (collectively, "Defendants"), asserting, *inter alia*, violations of her First Amendment rights based on alleged adverse actions taken against her because of the speech of her spouse. *See* Dkt. No. 2 ("Complaint"). On July 18, 2024, Defendants

1

filed a Notice of Removal to the Northern District of New York. *See* Dkt. No. 1. On September 13, 2024, Defendants filed a partial motion to dismiss, which seeks to dismiss Plaintiff's New York Civil Service Law § 75-b cause of action pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 15 ("Motion"). Plaintiff opposed the Motion on September 27, 2024, *see* Dkt. No. 17, and Defendants filed reply papers on October 14, 2024, *see* Dkt. No. 18. Accordingly, the Motion is now ripe for adjudication.

For the reasons that follow, the Motion is granted.

## II. BACKGROUND

The following facts are drawn from the Complaint and the exhibits attached the Complaint unless otherwise noted and are assumed to be true for purposes of ruling on the Motion. *See Div. 1181 Amalg. Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("On a motion to dismiss, a court may consider documents attached to the complaint as an exhibit") (quotation omitted).

### A. The Parties

Plaintiff is a resident of Saratoga Springs, New York and former employee of Defendant City of Saratoga Springs. *See* Dkt. No. 2 at ¶¶ 1, 3. Specifically, Plaintiff served as Secretary to the City Council from 2008 until she received a notice of her proposed termination on April 15, 2024. *Id.* at ¶ 48. As Secretary, Plaintiff was responsible for the administrative procedures of the City Council, including taking meeting minutes, setting up meetings, assisting the Council during meetings, and preparing the department budget and budget transfers. *Id.* at ¶ 8.

Defendant City of Saratoga Springs is a municipal corporation organized and existing under the laws of the State of New York. *Id.* at ¶ 2. According to Plaintiff, Defendant City of Saratoga Springs operates under a "Commissioner form of government," wherein "[t]he Mayor

and four part-time Commissioners sit on the City Council" and "[e]ach member of the City Council is responsible for a separate department." *Id.* at ¶ 4. Defendant Moran is the current Commissioner of Accounts on the City Council, and Defendant Connors is the current Deputy Commissioner of Accounts on the City Council. *Id.* at ¶ 5. In her role as Secretary to the City Council, Plaintiff reported to Defendants Moran and Connors. *Id.*

### B. Plaintiff's Allegations

The allegations in the Complaint pertain to public statements made by Plaintiff's husband during a City Council meeting and the subsequent conduct of Defendants. *See generally* Dkt. No. 2.

Specifically, Plaintiff alleges that, on February 1, 2022, her husband "spoke at a City Council meeting concerning how the City was handling protests in the City of Saratoga Springs and asserted the protests were disruptive to businesses and residents." *Id.* at ¶ 9. In the weeks following her husband's public remarks, Plaintiff claims that she was barred from being physically present at City Council meetings and was denied the ability to accrue compensatory time or receive overtime pay for City Council meetings. *Id.* at ¶¶ 10-11. Instead, another employee of the accounts department was assigned Plaintiff's task of taking meeting minutes, and other employees were allowed to accrue compensatory time without limitation. *Id.* at ¶¶ 14-15. As a result, on April 4, 2022, Plaintiff had a grievance meeting with her union, the Human Resources department, and Defendant Connors. *Id.* at ¶ 13. Around the time of that meeting, Defendant Moran accused Plaintiff of "spitting on activist protestors," which Plaintiff claims was "false and made with the intent to sully [P]laintiff's reputation and prejudice her career." *Id.* at ¶ 17. Plaintiff subsequently filed a complaint with Human Resources on April 6, 2022 because she believed that Defendant

3

Moran's comments and her recent mistreatment constituted retaliation for her husband's February 1, 2022 remarks. *Id.* at 18.[1]

In January 2023, following an arbitration that took place regarding her April 2022 complaint, Plaintiff received a favorable decision "restoring her right to accrue compensatory time." *Id.* at ¶ 21. Thereafter, Plaintiff alleges that Defendants Moran and Connors conspired to "mak[e] it seem as if [P]laintiff was to blame for various difficulties" with City Council meetings, including by failing to approve the placement of minutes on meeting agendas even though they needed to be voted on by the City Council within a certain time frame, as well as failing to provide Plaintiff with information necessary to complete specific agendas and thereafter professing ignorance at City Council meetings when asked why certain items were left off of the agendas. *Id.* at ¶¶ 22-25. Moreover, despite the favorable arbitration decision, Plaintiff continued to be "limited[,] and faced hostility in[,] getting her compensatory time approved." *Id.* at ¶ 26.

In addition to the above, Plaintiff alleges that, on September 15, 2023, she attended an administrative meeting with Defendants Moran and Connors, as well as with Assistant City Clerk Barbara Brindisi and Assistant Purchasing Agent Stefanie Richards, wherein Defendant Moran allegedly referred to Italians as "guinea WOPs," and called Plaintiff the "queen of grievances." *Id*. at ¶ 27. Plaintiff was the only Italian in the room during the September 15, 2023 meeting. *Id.*

Plaintiff further alleges that the actions of Defendants Moran and Connors continued into 2024. Specifically, in January 2024, Defendants Moran and Connors "shunned [P]laintiff and refused to speak to her" after Plaintiff rebuked Defendant Moran's request to provide another

---

[1] Plaintiff also claims that, as of May 3, 2022, she was required to report her daily activities to Defendant Connors and alleges that she "was the only employee required to do so." *Id.* at ¶ 16. And on August 25, 2022, in addition to the complaint she filed with Human Resources, Plaintiff's counsel sent a letter to Defendant Moran and the City Council "advising that they violated [P]laintiff's right of free association by punishing her for her husband's speech." *Id.* at ¶ 19.

4

employee with full access to Plaintiff's files, including password-protected files, which Plaintiff alleges would have violated IT Department policy. *Id.* at ¶¶ 28-30. Additionally, on February 16, 2024, Defendant Moran reassigned a portion of Plaintiff's job responsibilities to the City Mayor's executive secretary. *Id.* at ¶ 31. The same day, Plaintiff received a phone call from a Saratoga Springs resident who informed Plaintiff that Defendant Moran had accused Plaintiff of altering the contents of a City Resolution, which Plaintiff alleges was a false accusation. *Id.* at ¶ 32. In March 2024, at a City Council meeting, Defendants Moran and Connors accused Plaintiff of failing to include an item on the meeting's agenda and, as a result, Defendant Moran publicly stated that Plaintiff "can't even do her [expletive] job." *Id.* at ¶ 33. Plaintiff alleges that the agenda item was missing because Defendants did not give her ample time to include it. *Id.* at ¶ 33 (Defendant "Connors gave the document to [P]laintiff at 11:57 a.m. when the agenda cut off to add items is 12:00 p.m."). This event caused Plaintiff to file another complaint with Human Resources. *Id.* at ¶¶ 35, 37.

Plaintiff alleges that Defendant Moran continued to publicly discuss Plaintiff's job performance in a negative manner in March 2024, including by "telling people he was going to fire [P]laintiff because [P]laintiff allegedly forged a document." *Id.* at ¶¶ 41-42. On April 1, 2024, Defendant Connors publicly admonished Plaintiff by pointing out errors in the minutes from a prior City Council meeting. *Id.* at ¶ 43. Plaintiff actively sought out ways in which to revise the quality of the meeting minutes after the April 1, 2024 meeting, and sent Defendant Connors a revised version on April 5, 2024. *Id.* at ¶¶ 44-47. Plaintiff received no further feedback or response from Defendant Connors. *Id.* at ¶ 48.

On April 15, 2024, Plaintiff was given a notice of proposed termination from employment in a meeting with, among others, Defendant Connors, which Plaintiff claims was premised on her

5

husband's speech at the February 2022 City Council meeting, as well as a variety of other "false accusations that were intended as a pretext to secure the termination of her employment." *Id.*

Based on the foregoing, Plaintiff contends that Defendants violated her First Amendment rights by retaliating against her for her husband's speech and for her intimate association with her husband. *Id.* at ¶¶ 54-66. Plaintiff also claims that Defendants violated New York State Civil Service Law § 75-b ("Section 75-b") by taking adverse employment actions against her, *i.e.*, by altering the terms of her employment and ultimately serving her with a notice of proposed termination, in retaliation for her husband's speech and for her opposition to that retaliation. *Id.* at ¶¶ 67-76.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). While, in considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor, *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), dismissal is appropriate if the plaintiff can prove no set of facts that would entitle him to relief, *see Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the complaint must be dismissed. *Bell Atl. v. Twombly*, 550 U.S. 544, 558 (2007).

## IV. DISCUSSION

Defendants' Motion seeks dismissal of Plaintiff's Section 75-b cause of action. Primarily, Defendants argue that Section 75-b restricts Plaintiff from asserting a private right of action in federal court because the collective bargaining agreement between Defendant City of Saratoga Springs and Plaintiff's union sets forth a procedure through which Plaintiff may seek redress. *See*

6

Dkt. No. 15-4 at 10.  In the alternative, Defendants contend that, even if Plaintiff's Section 75-b claim was allowed to proceed, that claim should be dismissed against Defendant Moran because, since he is named as a Defendant in his official capacity, suing both him and Defendant City of Saratoga Springs is improperly duplicative.  *See* Dkt. No. 15-4 at 12.

Section 75-b is a New York whistleblower statute which "provides that adverse employment action may not be taken against a public employee based upon his or her disclosure of information [to a governmental body] 'which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action.'"  *Tipaldo v. Lynn*, 26 N.Y.3d 204, 210-11 (N.Y. 2015) (quoting N.Y. Civ. Serv. Law § 75-b(2)(a)).  Relevant here, Section 75-b(3)(a) states:

> Where an employee is subject to dismissal or other disciplinary action under a final and binding arbitration provision, or other disciplinary procedure contained in a collectively negotiated agreement, or under section seventy-five of this title or any other provision of state or local law and the employee reasonably believes dismissal or other disciplinary action would not have been taken but for the conduct protected under subdivision two of this section, he or she may assert such as a defense before the designated arbitrator or hearing officer.  The merits of such defense shall be considered and determined as part of the arbitration award or hearing officer decision of the matter.  If there is a finding that the dismissal or other disciplinary action is based solely on a violation by the employer of such subdivision, the arbitrator or hearing officer shall dismiss or recommend dismissal of the disciplinary proceeding, as appropriate, and, if appropriate, reinstate the employee with back pay, and, in the case of an arbitration procedure, may take other appropriate action as is permitted in the collectively negotiated agreement.

Additionally, Section 75-b(3)(c) states that "[w]here an employee is not subject to any of the provisions of paragraph (a) or (b) of this subdivision, the employee may commence an action in a court of competent jurisdiction under the same terms and conditions as set forth in article twenty-C of the labor law."

Courts interpreting Section 75-b(3)(a)-(c) have held that a public employee may only challenge an adverse personnel action in court if the employee is not subject to a collective

bargaining agreement that (i) prevents the employer from taking such adverse personnel action; and (ii) requires that the employee address the alleged violations of that provision through an arbitration or other disciplinary procedure.  *Healy v. City of New York Dep't of Sanitation*, No. 04-CV-7344, 2006 WL 3457702, at *6 (S.D.N.Y. Nov. 22, 2006) ("Only those employees not party to a collective bargaining agreement may file suit in federal court to enforce their rights under § 75-b."), *aff'd and remanded*, 286 Fed. Appx. 744 (2d Cir. 2008); *see also Munafo v. Metro. Transp. Auth.*, No. 98-CV-4572, 2003 WL 21799913, at *31 (E.D.N.Y. Jan. 22, 2003) ("An employee may bring suit under § 75-b in a court of competent jurisdiction only where a collective bargaining agreement does not substitute its own grievance procedure for the relief encapsulated by the statute.") (citing*, inter alia*, *Mottironi v. Axelrod*, 133 A.D.2d 948 (3d Dep't 1987)).

Defendants argue that, since Plaintiff's employment is governed by a collective bargaining agreement between Defendant City of Saratoga Springs and the union that represents City employees ("CBA"), and because the CBA contains a mechanism for employees to challenge decisions "relate[d] to removal, suspension, and discipline," Dkt. No. 15, Ex. B at p. 17, the restriction barring private rights of action outlined in Section 75-b(3)(a) applies.  *See* Dkt. No. 15-4 at 9-12.  More specifically, Defendants contend that the grievance mechanism outlined in the CBA is encompassed by the plain language of the private action restriction in Section 75-b(3)(a), which accounts for "other disciplinary procedure[s]" and not exclusively "final and binding arbitration."  *See* Dkt. No. 15-4 at 11.

In opposition, Plaintiff does not dispute that the terms of her employment are governed by the CBA.  *See* Dkt. No. 17 at 2-3.  Rather, Plaintiff contends that the line of cases upon which Defendants rely interpreting Section 75-b(3)(a)'s restriction does not apply because the CBA's mechanism for challenging disciplinary determinations is a hearing pursuant to Section 75 instead

8

of binding arbitration. *Id.* at 2-3. Moreover, Plaintiff argues that the use of the permissive term "may" in Section 75-b(3)(a) (*i.e.*, "he or she **may** assert such as a defense before the designated arbitrator or hearing officer") indicates that Plaintiff has the option to challenge Defendants' conduct either through the CBA's hearing mechanism or in court. *Id.* at 4.[2]

In reply, Defendants argue that courts have already interpreted Section 75-b(3)(c) to preclude employees who have a right to a Section 75 hearing from bringing a civil suit, regardless of whether the employee took advantage of such right. *See id.* at 8-9 (citing *Balchan v. New Rochell City Sch. Dist.*, No. 23-CV-06202, 2024 WL 2058726, at *2, 9 (S.D.N.Y. May 7, 2024)). As to statutory construction, Defendants again rely on the statutory language itself, contending that "the 'may' in § 75-b(3)(a) sets out the rights of an employee subject to b(3)(a), it does not define which employees are 'subject to' 75-b(3)(a)." Dkt. No. 18 at 8.

The Court agrees with Defendants that Plaintiff's state law cause of action must be heard through the mechanism set forth in the CBA.

First, the plain language of the statute indicates that a collective bargaining agreement need not provide for arbitration in order to subject that employee to Section 75-b(3)(a)'s terms and restrictions. *See* Section 75-b(3)(a) ("Where an employee is subject to dismissal . . . under a final and binding arbitration provision, **or other disciplinary procedure** contained in a collectively negotiated agreement . . . .") (emphasis added). Thus, the fact that the CBA in this case does not contain a clause allowing employees to challenge disciplinary action via arbitration is of no

---

[2] While Plaintiff posits that adopting Defendants' interpretation of Section 75-b(3)(a) would lead to an "absurd result" wherein provisional employees would be allowed to pursue disciplinary challenges in court but persons like Plaintiff would not, *id.* at 4, as Defendants point out, the purpose of Section 75-b is "to provide a forum for retaliation arguments to employees who do not otherwise have such a forum." Dkt. No. 18 at 6-7 ("That Plaintiff would have a different forum for her retaliation argument if she were a provisional employee does not make the statute absurd.").

9

moment. *See, e.g.*, *Specht v. City of N.Y.*, 15 F.4th 594,606 (2d Cir. 2021) (affirming district court's dismissal of a plaintiff's Civil Service Law claims for failure to exhaust the administrative remedies outlined in a collective bargaining agreement, which included, *inter alia*, a requirement that the plaintiff file an internal grievance and seek two subsequent appeals); *Perfetto v. Erie Cnty. Water Auth.*, No. 03-CV-0439E, 2006 WL 1888556, at *5 (W.D.N.Y. July 7, 2006) (dismissing Section 75-b claim based on Section 75-b(3)'s restrictions on private rights of action even though collective bargaining agreement did not contain an arbitration provision). Here, Plaintiff concedes that (i) she is subject to the CBA; (ii) the CBA contains a mechanism by which employees can challenge disciplinary decisions; and (iii) she has either begun the process of challenging her disciplinary decision through that mechanism and is currently awaiting a hearing, *see* Dkt. No. 17 at 2, or has outright failed to challenge her disciplinary decision through that mechanism. *See generally* Dkt. No. 17; *see also Balchan*, 2024 WL 2058726, at *2, 9 (Section 75-b(3)(a) restriction bars retaliation claims in court even where a plaintiff fails to take advantage of the bargained-for grievance procedures).

Second, the New York Legislature's inclusion of Section 75-b(3)(c), which permits an employee to "commence an action in a court of competent jurisdiction" where that employee "is not subject to any of the provisions of paragraph (a) and (b) of this subdivision," evidences that, contrary to Plaintiff's position, the Legislature intended challenges of this nature to be heard in court only where a public employee is not already subject to a collective bargaining agreement that provides a procedure through which the employee may seek redress. Otherwise, the carve-outs in Section 75-b(3)(a) and 75-b(3)(b) for employees subject to collective bargaining agreements would be rendered superfluous. Plaintiff does not cite, and the Court is unaware of, any case law supporting the position that employees who are indisputably subject to Section 75-

10

b(3)(a) may choose whether to challenge their disciplinary action in accordance with a bargained-for grievance procedure or in court. To the contrary, cases addressing similar questions support this Court's interpretation. *See In re M.B.*, 6 N.Y.3d 437, 447 (N.Y. 2006) (noting that where the statutory language being challenged is one component of a larger statutory scheme, the statute "must be analyzed in context and in a manner that 'harmonizes the related provisions and renders them compatible.'") (quoting *In re Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 N.Y.2d 86, 91 (N.Y. 2001)); *Seung-Yong Ok v. N.Y.C. Dep't of Educ.*, No. 18-cv-0392, 2018 WL 2121562, at *3 (E.D.N.Y. May 8, 2018) ("For those employees subject to dismissal or other disciplinary action under a disciplinary procedure contained in a collectively negotiated agreement, the employee may assert the wrongful discipline as a defense in the course of that disciplinary procedure . . . *[o]nly employees disciplined through a process that was not collectively negotiated may sue*.") (internal quotations and citations omitted) (emphasis added); *Dibiase v. Barber*, No. CV-06-5355, 2008 WL 4455601, at *9 (E.D.N.Y. Sept. 30, 2008) ("The statute makes clear that an employee facing retaliation may commence an action in a court of competent jurisdiction *only when that employee is not subject to any of the provisions of paragraph [(3)](a)*.") (internal quotations and citations omitted) (emphasis added); *Ruotolo v. City of N.Y.*, No. 03-Civ-5045, 2005 WL 1253936, at *2 n.2 (S.D.N.Y. May 25, 2005) (granting a motion to dismiss because "New York Civil Service Law *only provides a cause of action where no grievance procedure is available* under a collective bargaining agreement, and Plaintiff had not rebutted Defendants' argument that there had been grievance procedures available to him.") (emphasis added).

11

As a result, Defendants' Motion is granted and Plaintiff's New York Civil Service Law § 75-b claim is dismissed in its entirety.[3]

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' partial motion to dismiss, Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cause of action pursuant to New York Civil Service Law § 75-b is **DISMISSED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 16, 2025
       Albany, New York

_____
Anne M. Nardacci
U.S. District Judge

---

[3] Because the Court dismisses Plaintiff's Section 75-b claim in its entirety, it need not address Defendants' secondary argument that asserting such claim against Defendant Moran is duplicative.